UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| SHANE L. HILL<br>    LA. DOC #126168<br>VS. | CIVIL ACTION NO. 3:15-cv-2178<br><br>SECTION P<br><br>JUDGE ROBERT G. JAMES |
| RAY HANSON, ET AL. | MAGISTRATE JUDGE KAREN L. HAYES |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Shane L. Hill, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on August 12, 2015. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (DOC). He is incarcerated at the Morehouse Parish Detention Center (MPDC); however, he complains about conditions of confinement he experienced while incarcerated at the Richwood Correctional Center (RCC). He sued RCC personnel including Wardens Ray Hanson and Archie Aultman, Lt. Stanton Johnson, and Sgt. Gerald Hardwell, and Corrections Officers Calill Cokerham and Tyrone Coleman. Plaintiff prays for nominal and punitive damages for Constitutional violations and compensatory damages for his State law claims. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Statement of the Case*

Plaintiff is an inmate in the custody of the DOC. He is serving a 10 year sentence imposed following a felony conviction. Plaintiff arrived at RCC on January 21, 2013, and began

participating in RCC's Transitional Work Program (TWP) on February 4, 2013. Plaintiff was assigned to work at Foster Farms, a chicken processing plant.

On July 21, 2014, upon plaintiff's return to RCC from his work assignment, defendant Johnson, Hanson, and Aultman called plaintiff from the bus, placed him in restraints, and escorted him to the booking area at RCC. Aultman "grabbed plaintiff by the back of his neck and accused him of making a profane statement to a co-worker at Foster Farms." Plaintiff denied the allegation and when he continued to deny it he was threatened by Aultman. Plaintiff was made to kneel on a concrete bench and Aultman pushed his face into the wall.

Hanson then charged plaintiff with a violation of Rule #3 – Defiance, and ordered him confined in Lock Down. Unnamed guards conducted a visual body cavity search of plaintiff before placing him in his Lock Down cell. Johnson requested and obtained the combination to plaintiff's locker in Unit A. Plaintiff was then outfitted with a "black and white striped jumpsuit that smelled of body order and was soiled with what looked to be food." Plaintiff was then confined in a two-man cell with three other offenders. Plaintiff was forced to sleep on a mattress on the floor, was not given any of his personal property (clothes, hygiene articles, writing supplies, etc.), was denied commissary privileges, was denied telephone privileges, and was denied any opportunity to contact his mother for the duration of his stay in Lock Down. He was not allowed to shower until July 26-27, 2015, and was provided neither soap nor towels. He dried himself with the soiled jumpsuit.

Plaintiff was released from Lock Down on August 7, 2014, and assigned to Unit #5; upon his return from Lock Down plaintiff became aware that the following items of personal property were missing – (1) G.E.D. with scores; (2) paralegal diploma; (3) grade transcripts; (4) two Top

Flight composition books containing legal research notes and opinions pertaining to conditions experienced at the T.W.P.; (5) file folder containing memorandum relative to plaintiff's T.W.P. employment; (6) two calendars; (7) nine audio CDs; and (8) three bottles of cologne. On August 10, 2014 plaintiff submitted an "offender request" concerning the missing property; he did not receive a response. On August 26, 2014, he submitted two Administrative Remedies grievances, one involving his "freedom of speech issues" and the other involving the missing property. On August 29, 2014, Capt. Coleman assured plaintiff that he was working on the grievances. Thereafter, but on the same date plaintiff was transferred to Madison Corrections Center. According to plaintiff the transfer was an act of retaliation for "plaintiff's right to exercise his right to petition."

On September 10, 2014, plaintiff mailed copies of his grievances to Warden Hanson at RCC. As of the date plaintiff filed his complaint, he had not received a response to his grievances.

Notwithstanding his litany of complaints, plaintiff now asserts only the following claims for relief:

(1) Plaintiff's right to "free speech" was violated when he was prohibited from sending correspondence to his mother from July 21 - August 7, 2014;

(2) Plaintiff's right to due process was violated when he was confined to Lock Down from July 21 – August 7, 2014;

(3) The defendant Warden Hanson retaliated against plaintiff's exercise of his constitutional rights (submission of grievances) by transferring him to the Madison Correctional Center;

(4) Plaintiff's rights to equal protection were violated when he was deprived of writing supplies, clean clothes, and hygiene articles from July 21 - August 5, 2014; and,

(5) Defendant's negligently lost plaintiff's personal property in violation of the Louisiana Civil Code.

As previously noted, plaintiff prayed for nominal and punitive damages for the violation of his Constitutional rights and nominal, compensatory, and punitive damages for his claims arising under Louisiana law.

*Law and Analysis*

*1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v.*

*Iqbal,* 556 U.S. 662, 678 (2009).

The law accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A complaint is frivolous if it lacks an arguable basis in fact (i.e. the facts are clearly baseless, a category including allegations that are fanciful, fantastic, or delusional). *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir.1995); *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Herndandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

*2. Freedom of Speech*

Plaintiff claims that his First Amendment right to freedom of speech was violated when he was prohibited from sending correspondence or using "any means" to contact his elderly mother during his confinement to Lock Down for the 18 day period between July 21-August 7, 2014.

Section 1983 permits a private right of action for violations of the Constitution or laws of the United States by those acting under the color of state law. Title 42 U.S.C. § 1983. Plaintiff claims that the defendants, acting under color of state law, deprived him of his First Amendment right to freedom of speech. To establish standing to bring a claim under Section 1983, a plaintiff must not only challenge a specific action of the state actor, as noted above, but he must also allege facts sufficient to show that such action resulted in an actual concrete injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Here, plaintiff identified no injury,

damage, or prejudice resulting from the alleged deprivation. Plaintiff's inability to correspond with his mother for such a relatively brief period, simply does not establish a compensable claim under the First Amendment. *Wheeler v. Penland*, 247 Fed. Appx. 495 (5th Cir. 2007) (prisoner's claim that he was prohibited from telephone contact with his family for one year held not cognizable under Section 1983), citing *Geiger v. Jowers*, 404 F.3d 371, 374–75 (5th Cir.2005).

Plaintiff was unable to correspond with his mother for a period of less than 3 weeks; his fails to state a claim under the First Amendment and his prayer for nominal and punitive damages must therefore be denied.

### 3. Due Process

Plaintiff also maintains that his Fourteenth Amendment right to due process was violated when he was confined to Lock Down from July 21 – August 7, 2014. By virtue of a valid criminal conviction and subsequent legal confinement, a prisoner loses his expectation of liberty. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Assuming for the sake of argument that plaintiff was falsely accused of the disciplinary rules violation and thereafter sanctioned with 18 days of confinement in administrative segregation, his complaint still fails to state a claim for which relief might be granted. "The Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The federal jurisprudence holds, that while the states may under certain circumstances create rights that implicate Due Process, such rights are limited to freedom from restraints that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Thus, relying on *Sandin*, the Fifth Circuit has found that "'administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest.' " *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir.1996) (quoting *Luken v. Scott*, 71 F.3d 192, 193 (1995)) (rejecting claim that confinement in administrative segregation violated prisoner's due process rights). The Fifth Circuit has also rejected a state prisoner's claim that the additional restrictions imposed on those in administrative segregation violated his due process rights. *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir.1998) (*per curiam*). Therein the court stated " 'absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable liberty interest.' " *Id.* at 580 (quotation omitted).

In other words, when a prisoner is lawfully incarcerated, he loses many of the rights and privileges that most citizens enjoy. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.1997). Thus, "... mere[ ] changes in the conditions of [ ] confinement ... do not implicate due process concerns." *See Madison*, 104 F.3d at 768; see also *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir.1999) ("Inmates have no protectable property or liberty interest in custodial classifications."). Therefore, even if plaintiff lost privileges or was confined for a period of time in administrative segregation as a result of the defendants' allegedly false charges, these punishments were not "atypical" and thus his complaint fails to state a claim for which relief might be granted.

### 4. Retaliation/Transfer

Plaintiff also claims that Warden Hanson retaliated against him when he exercised his

constitutional rights to submit prison grievances by transferring him to the Madison Correctional Center. "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir.2006) (internal quotation marks and citation omitted). "The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (internal quotation marks and citation omitted). "Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris*, 449 F.3d at 686.

According to plaintiff, on August 26, 2014, he submitted two Administrative Remedies grievances, one involving his "freedom of speech issues" and the other involving missing property. On August 29, 2014, plaintiff was transferred to Madison Corrections Center. According to plaintiff the transfer was an act of retaliation for "plaintiff's right to exercise his right to petition", however, his conclusory allegation does not establish causation. Further, he offers no facts to suggest that the transfer to Madison Corrections Center amounted to an adverse act. *Compare Smith v. Hebert*, 533 Fed. Appx. 479 (5th Cir. 2013).

Finally, by his own admission, after his transfer to Madison Corrections Center, plaintiff mailed copies of his grievances to Warden Hanson at RCC. Clearly plaintiff was not deterred. In short, plaintiff's retaliation claim is frivolous.

*5. Equal Protection*

Plaintiff also claims that his Fourteenth Amendment right to equal protection were

violated when he was deprived of writing supplies, clean clothes, and hygiene articles from July 21 - August 5, 2014. The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 439-40, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982).

The mere claim that a state official unfairly applies a policy fair on its face, against those who are entitled to equal treatment, "is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944). Further, even "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962); *Petition of Breen*, 237 F.Supp. 575 (S.D.Tex.1964), aff'd on other grounds, 341 F.2d 96 (5th Cir.1965), *cert. denied*, 386 U.S. 926, 87 S.Ct. 867, 17 L.Ed.2d 798 (1967).

Most importantly, the allegation of selective enforcement must be supported by grounds that show it was "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler*, 368 U.S. at 456. Plaintiff claims that he was treated unfairly *vis a vis* other inmates confined to Lock Down; however, the discrimination he alleged was not based upon race, religion, or any other arbitrary classification, and therefore he fails to state a claim for which relief may be granted.

### 6. *Negligence Under Louisiana Law*

Finally, plaintiff claims that the defendants negligently lost his personal property in violation of the Louisiana Civil Code.[1] He asks the Court to exercise its pendent jurisdiction in order to consider the claim. Under the doctrine of pendent jurisdiction, a federal court has the constitutional power to hear a state law claim if it is closely related to another federal claim. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). However, it is also clear that a district court has wide discretion to refuse to hear a pendent state law claim. See 28 U.S.C. § 1367(c)(3); *United States v. Capeletti Bros., Inc.*, 621 F.2d 1309, 1317–18 (5th Cir.1980). The "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise

---

[1] Plaintiff prays for relief pursuant to Louisiana law for his deprivation of property claim. Of course, such a claim cannot be raised in a Section 1983 complaint since claims for random deprivation of personal property, are not cognizable under §1983. In *Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), a prisoner claimed that prison officials had negligently deprived him of his personal property without due process of law. The Supreme Court held that the prisoner was "deprived" of his property within the meaning of the Due Process Clause of the Fourteenth Amendment, but the Court ruled that the State's post-deprivation tort remedy provided all the process that was due. *Id.,* 451 U.S. at 536-37, 101 S.Ct. at 1913.

The Due Process Clause does not embrace tort law concepts. Although a litigant may be afforded a remedy under state tort law for deprivation of property, the Fourteenth Amendment does not afford such a remedy. *Daniels v. Williams,* 474 U.S. 327, 335, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986). Even in instances where intentional deprivation occurs where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated, so long as the deprivation was "random." *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995); *Murphy v. Collins*, 26 F.3d 541 (5th Cir. 1994).

This principle (known as the *Parratt/Hudson* doctrine) rests on the premise that because the state is unable to predict random and unauthorized conduct, pre-deprivation remedies are unfeasible. *Davis*, 70 F.3d at 375, citing, *Zinermon v. Burch*, 494 U.S. 113, 128-32, 110 S.Ct. 975, 985-86, 1098 L.Ed.2d 100 (1990) (distinguishing between random unauthorized conduct and a deprivation which results from predictable conduct authorized by a State).

eliminated from a case prior to trial." *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir.1999) (citation omitted); *accord Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) ( "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims."). Should the Court adopt this recommendation to dismiss plaintiff's Section 1983 claims as frivolous or for failing to state a claim for which relief may be granted, dismissal of the pendent claims would be appropriate.

*Recommendation*

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A; **IT IS FURTHER RECOMMENDED THAT** plaintiff's State law claims be **DISMISSED WITHOUT PREJUDICE** to plaintiff's right to refile said claim in the Courts of Louisiana.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by**

**Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, October 13, 2015.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE